ROSEN v. BEH.

1. AUTOMOBILES—HORSEBACK RIDER—FINDING OF COURT.
    In action, tried without a jury, by one riding horse on highway for personal injuries sustained when horse and defendant's automobile collided, record *held*, insufficient to justify disturbance of finding of court that defendant driver was not negligent and that proximate cause of the accident was failure of plaintiff to keep control of his horse.

2. SAME—WRONG SIDE OF ROAD—PARKED VEHICLES.
    Motorist who proceeded on wrong side of road around parked car and boat trailer was not guilty of negligence as a matter of law but had a right to so drive provided he exercised reasonable care in doing so (1 Comp. Laws 1929, §§ 4703, 4706, 4707).

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted June 19, 1935. (Docket No. 68, Calendar No. 38,331.) Decided September 9, 1935.

Case by David Rosen against Joseph C. Beh and Joseph C. Beh, Jr., for personal injuries, sustained while riding a horse, because of alleged negligent operation of defendants' automobile. Judgment for defendants. Plaintiff appeals. Affirmed.

*Bloom & Bloom* (*Clarence P. Milligan,* of counsel), for plaintiff.

*Frederick J. Ward,* for defendants.

NORTH, J. Plaintiff, while riding a horse on a public highway, came into collision with a Ford automobile owned by defendant, Joseph C. Beh, and driven by his son, Joseph C. Beh, Jr. Plaintiff was seriously injured. He brought this suit for damages claiming the automobile was driven in an unlawful and negligent manner which caused the accident. On trial in the circuit court without a jury defendants had judgment. Plaintiff has appealed.

Numerous assignments of error are made, but in the main plaintiff's brief is devoted to the contention that decision in the circuit court was against the clear weight of evidence. A careful review of the record discloses a direct conflict of testimony on practically every salient phase of the case. The accident happened in daylight hours on an east and west highway which skirts the north shore of Pine lake in Oakland county. There is a shoulder or space of varying width between the south line of the traveled portion of the highway and the top of the bank which slopes rather sharply down to the lake shore. The traveled portion of the road is about 20 feet in width. There is also a sod or grass margin on the north side. At or near the point of accident and at the time of the accident another automobile with a boat trailer headed west was parked on the north side of

the road. The rear end of the boat on the trailer by reason of being parked at an angle extended practically to the center line of the gravel road. The Ford automobile was proceeding in a westerly direction and as it approached the parked auto and boat trailer the driver turned his machine to his left in passing and in so doing went onto the southerly half of the highway. Just at that time plaintiff was attempting to pass in an easterly direction on horseback. He was accompanied by three other riders, one of whom was immediately behind or on the right side of plaintiff's horse. It is plaintiff's claim that the approaching automobile was driven at a dangerous and negligent rate of speed and so near to the south line of the road that plaintiff could not pass in safety, and that he and the horse he was riding were struck by the automobile and plaintiff thereby injured, he being free from any contributory negligence.

On the other hand defendants' witnesses gave testimony in support of their claim that the driver of the Ford car was free from negligence and that the accident was caused by the horse plaintiff was riding becoming unmanageable and by sidestepping into the left side of the Ford car as it was passing. One of defendants' witnesses testified:

"The leading horse (plaintiff's mount) then swerved over on to the grass, and I thought everything was all right, and the car swung out around the trailer, to their side of the road, and started to go up. Then the collision took place. The accident happened when the car was directly opposite the trailer tongue on my car, as near as you could see it. * * * I mentioned about the horse sidestepping to one side. It did that immediately after the horses started around that little shack (which stood on the southerly side of the road). The first horse, No. 1,

sidestepped. He acted like he was scared and
startled, and he was kind of prancing a little and the
rider was pulling tight on the reins and said, 'whoa,'
a couple of times. He held his horse and he kept
holding tight to the lines, then horse No. 2 came gal-
loping up, and spurring his horse on and reached
out, rider No. 2 did, with one hand, in an attempt to
grab the reins of horse No. 1. Horse No. 2 was on
his right side of horse No. 1. When horse No. 1 came
around the little shack, he first started off on the
road, going on that shoulder on the grass, and then
straight; that is when the Ford car started coming
around my trailer, then horse No. 2 came galloping
up, and tried to get a hold of his reins, of horse
No. 1, and he crowded horse No. 1 right into the Ford
car. Then horse No. 2 got on the right side of horse
No. 1, on the right-hand side and crowded horse
No. 1 to the left between the parked car, the Ford
and horse No. 2. Just before he got to the car, he
turned sideways. I should say the width of the road
is about 5 to 6 feet wider than 2 cars. There were
no other cars there at the time of the accident be-
sides my car and the Ford. I looked both in a west-
erly direction and an easterly direction. * * *

"*Q.* And do you know what speed it (the Ford
car) then traveled after it swung out to the left?

"*A.* Well it was traveling very slowly and I would
not say over 8 or 10 miles an hour, somewhere near
that, it was slow enough so the man could have
stopped by applying his brakes quickly. * * * The
car stopped immediately when the horse struck it.
* * * They (the parked vehicle and the Ford) were
quite close together, about as close as a man would
try to drive. * * * I would not say more than a
foot. * * * After I turned and looked at the car,
and then immediately turned around, and kept walk-
ing, the (plaintiff's) horse appeared to me as though
he was out of control, partially. The second rider
was quite a little distance at that time, he had his
horse well under control, but the first horse was

prancing around and acting like he was trying to go and the man looked scared to me. * * * After the collision it appeared the Ford car was brought to a stop pretty near instantly. He probably moved a foot or so. Then he brought it to a stop.''

Defendant Joseph C. Beh, Jr., testified:

''As we were parallel with the side of the road, of the car that was parked there, we were about between the car and the trailer, we joined with the horse that was coming from the west, it was even with our car afterwards, and it seemed about past when it sidestepped into the side of the car, and we stopped right then. * * * Our front bumper was right opposite their back bumper, when we came in contact with the horse, but I do not believe we went more than a foot when we stopped. We were a little over the center line of the road, I think. * * * After I got out of my car, after the accident had taken place, there was about eight feet, I imagine, between the left side of my car and the edge of the gravel road. The shoulder is a hard-packed side shoulder, and there were not any obstructions in it, right along in there. * * * Neither the horse nor the rider came in contact with any part of the front of my car.''

The quoted testimony is corroborated by that of other witnesses. As mentioned above there is decided conflict in the testimony of the witnesses for the respective parties. This is especially true as to the width of the road south of the car and trailer, the width of the shoulder or grass strip on the south side of the traveled portion of the road at the point of accident, whether there was a ditch along the south side of the road, the rate at which the Ford automobile was being driven, the location of this machine on the highway, the distance it went after the accident before stopping, the rate at which plaintiff was riding, and whether his horse was or was

not out of control. The circuit judge, who heard and saw the respective witnesses, stated in his decision:

"The court finds that the plaintiff has not proven the requisite elements of his case by a preponderance of the testimony reaching the dignity of evidence—in fact the court finds that the defendants have established that they were not negligent in the operation of the automobile, and that the proximate cause of the accident and resulting injury of the plaintiff was because Annabelle, the horse upon which plaintiff was riding, sidestepped into the side of the Ford car driven by Joseph Beh, Jr., and that plaintiff did not have such horse under control."

Consideration of the record on this appeal satisfies us that there is no just reason for disturbing the finding of the trial judge. Nor do we find any error of law in the trial of this non-jury case that affords ground for reversal.

Plaintiff stresses the claim that if, as defendants assert, plaintiff's horse was out of control that fact was observed by the driver of the Ford automobile and on that account the driver was bound to exercise a greater and commensurate degree of care. But this phase of the case must be considered in the light of the testimony above quoted and other testimony from which the trial judge found, and we think justly so, that the defendant driver was "not negligent in the operation of the automobile." It cannot be held, as appellant contends, that since the driver of the Ford automobile was proceeding on his left-hand side of the highway he was guilty of negligence as a matter of law. He had a right in passing the parked car and trailer to veer to his left and drive on the southerly or left-hand part of the traveled portion of the highway providing he exercised reasonable care in so doing. See 1 Comp. Laws 1929, §§ 4703, 4706, 4707.

Plaintiff also urges on this appeal that the record discloses no negligence on his part. Even so, it does not follow that defendants should be held liable. There is evidence in the record tending to disclose negligence on the part of plaintiff's companion which may have been the proximate cause of the accident; and aside from this, it is quite within the bounds of the record to conclude that plaintiff's misfortune was purely an accident without negligence on the part of anyone. In any event, in the light of the testimony of all the witnesses who appeared before the trial judge he found defendants free from actionable negligence and the record sustains his finding.

The judgment entered in the circuit court is affirmed. Costs to appellees.

POTTER, C. J., and NELSON SHARPE, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.